IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JAMES GLENN WILDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 106-103 |
| | ) | |
| JIM WALLEN and EDWIN BENTLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff brings this § 1983 case alleging the defendant law enforcement officers violated his Constitutional rights by seizing his briefcase without a warrant from a friend who voluntarily turned over the briefcase despite Plaintiff's instructions not to release the briefcase to anyone. After the seizure, Defendants obtained a warrant authorizing a search of the briefcase and located evidence used to convict Plaintiff in state court of statutory rape, aggravated child molestation, and sexual exploitation of a child. Plaintiff moved to suppress the evidence because of the warrantless seizure of the briefcase, which spawned five decisions ultimately confirming admissibility of the evidence by the Superior Court of Lincoln County, Georgia, the Georgia Court of Appeals, and the Georgia Supreme Court. The Court **GRANTS** Defendants' motion for summary judgment (doc. no. 62) because the warrantless seizure did not violate clearly established law.

## I. FACTS

At the time of the underlying criminal investigation, Defendant Edwin Bentley was the Sheriff of Lincoln County, Georgia, and Defendant Jim Wallen was the Chief Deputy. (Doc. no. 1, Compl., p. 4; doc. no. 62-3, Supp. Hring. Tr., pp. 36-37; Compl., p. 5; doc. no. 62-1, Bentley Decl., ¶ 2.) In 2004, Ms. April Quick informed Deputy Wallen that Plaintiff was involved in a sexual relationship with a female under the age of sixteen, and that Plaintiff stored evidence of the relationship in a briefcase held by Ms. Judy Malin, a friend of Plaintiff's who lived in Columbia County. (Supp. Hring. Tr., pp. 38, 56-58.) Ms. Malin, as she later testified, agreed to store the locked briefcase in her home until Plaintiff returned to pick it up, and agreed to Plaintiff's directive that she not release the briefcase to anyone else. (Id. at 38, 62, 65-67, 70.)

Acting on the tip from Ms. Quick, Deputy Wallen telephoned Ms. Malin to inquire whether she would release the briefcase to him, explaining to Ms. Malin that she could face criminal charges "for the briefcase if [she] was involved." (Id. at 71.) Ms. Malin agreed to give Deputy Wallen the briefcase because she was afraid, confused, did not know what was inside the briefcase, and wanted it out of her home. (Id. at 67, 69-71.) At Deputy Wallen's request, Ms. Quick traveled to Ms. Malin's residence in Columbia County and retrieved the briefcase. (Id. at 38, 43, 55, 58.) When Ms. Quick returned with the briefcase, Deputy Wallen gave her twenty dollars for gas money. (Id. at 58, 60.) At the time, "there was no policy covering the protocol for a deputy who sought to obtain an item of property believed to contain incriminating evidence from a person who had possession and control over the item but was not the owner." (Bentley Decl., ¶ 4.)

With the briefcase now in his possession, Deputy Wallen applied for and received a warrant to search the briefcase from the Lincoln County Magistrate Judge, and inside Deputy

2

Wallen found the videos and photographs used to prosecute Plaintiff. (Id. at 39, 41-42; Compl., p. 7.) Plaintiff contends that the briefcase also contained private pictures of his wife which were never returned to him. (Compl., p. 9.) It is undisputed, however, that Plaintiff never pursued any proceeding in state court to obtain these pictures or any other property purportedly not returned to him. (Doc. no. 62-5, Defs.' Stm. of Undisputed Material Facts, ¶ 20.)

## II. THE STATE COURT DECISIONS CONSIDERING PLAINTIFF'S MOTION TO SUPPRESS

The five judicial decisions spawned by Plaintiff's motion to suppress are interesting and key to resolution of the summary judgment motion because of the considerable light they shed on the state of the law at the time of the warrantless seizure. Accordingly, the Court will examine each in turn.

### A. Trial Court

While the trial court's initial ruling on the motion to suppress is not included in the current record, the Georgia Supreme Court summarized the ruling as follows:

> [T]he trial court denied Wilder's motion to suppress on the ground that Malin had validly consented to the seizure of the briefcase; alternatively, the court held that the evidence was admissible under the independent source doctrine, which authorizes admission of evidence initially discovered through improper means if it was ultimately "obtained . . . by a means untainted by and unrelated to the initial illegality."

Wilder v. State, 717 S.E.2d 457, 459 (Ga. 2011).

### B. Georgia Court of Appeals

The Georgia Court of Appeals affirmed the trial court's initial ruling on the basis of the independent source doctrine only. Wilder v. State, 698 S.E.2d 374, 376-78 (Ga. App. 2010). The Court of Appeals began its decision by explaining that (1) the Fourth Amendment protects briefcases as traditional repositories of private items; and (2) this protection applies even though

3

Ms. Quick seized the briefcase instead of Deputy Wallen because "the State cannot avoid a Fourth Amendment challenge to a search and seizure by asking a private citizen to act on its behalf and seek out evidence." Id. at 377, 378. Avoiding the issue of consent entirely, the Court of Appeals held that the independent source doctrine applied because Deputy Wallen opened the briefcase only after obtaining a valid warrant based on information he obtained independently from statements provided by Ms. Quick and the victim. Id.

### C. Georgia Supreme Court

The Georgia Supreme Court reversed and remanded, holding that the independent source doctrine did not apply despite Deputy Wallen's use of independent information to obtain the search warrant because "the *search itself* cannot be said to have been conducted independent of the seizure, as it was the seizure that in fact made possible the search that actually occurred." Wilder, 717 S.E.2d at 460. Noting the Court of Appeals' failure to consider the trial court's alternative holding of valid consent by Ms. Malin, the Georgia Supreme Court remanded rather than taking up this issue *sua sponte* because of its professed "uncertainty over the applicability of the third party consent doctrine where, as here, there is evidence that the third party assumed the role of bailee with respect to property seized without a warrant." Id. at 461. In support of this statement, the Georgia Supreme Court cited a well-known search and seizure treatise for the proposition that the question of third party consent in the bailee context is legally complex and fact-intensive. Id. (citing 4 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 8.6(a) (4th ed. 2004).) Finally, the Georgia Supreme Court "decline[d] now to decide whether the circumstances would warrant application of the 'inevitable discovery doctrine,' a close relative of the independent source doctrine." Id.

4

### D. On Remand to Trial Court

On remand, the trial court determined that denial of the motion to suppress was appropriate because (1) Ms. Malin validly consented to the seizure as bailee; (2) Ms. Malin had an independent right as custodian to exculpate herself by cooperating with law enforcement and relinquishing possession of the briefcase; and (3) the inevitable discovery doctrine applied to allow admission of the evidence even if seizure of the briefcase was illegal. (Doc. no. 62-4, State v. Wilder, Crim. Action No. 2005CR3630 (Super. Ct. Mar. 19, 2012), pp. 4-6.)

First, with respect to consent, the trial court began with the United States Supreme Court's holding in 1974 that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). Building on this general proposition, the trial court cited the same LaFave treatise for the proposition that whether a bailee may validly consent to a police search depends on the degree of control over the property given to the bailee by the bailor. (See doc. no. 62-4, p. 3 (citing 4 Dwayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 8.6(a) (4th ed. 2004).)

Next, the trial court reasoned that the key factual inquiry is whether Ms. Malin had authority to consent to seizure of the briefcase itself, not whether she had authority to open the briefcase or use its contents. (Id. at 4.) This is because Deputy Wallen obtained a search warrant to open the briefcase and only performed the initial act of seizing the briefcase without a warrant. (Id.) Next, quoting a recent Seventh Circuit decision, the trial court concluded that "'[c]onsent to search or seizure may be obtained from any person who has common authority over the property

(actual authority) . . . or who would appear to a reasonable person, given the information that law enforcement possessed, to have common authority over the property. . . .'" (Id. at 4 (quoting United States v. James, 571 F.3d 707, 714 (7th Cir. 2009).) The trial court found that, while Ms. Malin may not have had actual authority, she had apparent authority to consent from the perspective of Deputy Wallen because Plaintiff left the briefcase at her home for an extended period of time, and nothing in the record suggested that Ms. Malin told Deputy Wallen of Plaintiff's instruction that she could not release the briefcase to anyone other than him. (Id. at 4-5.) Notably, the latter finding is incorrect because Ms. Malin testified during the suppression hearing that she relayed Plaintiff's instruction to Deputy Wallen. (Suppr. Hrg. Tr., p. 70.)

Second, with respect to Ms. Malin's right to disassociate herself from the worrisome briefcase, the trial court held that Ms. Malin was reasonably concerned about the unknown contents of the briefcase and "had the authority to disassociate herself from that evidence by voluntarily surrendering it to the authorities." (See doc. no. 62-4, p. 5.) In support, the trial court quoted and adopted the following language from the Alaska Supreme Court, as cited from United States v. Diggs, 544. F.2d 116, 119 (3d Cir. 1976):

> The right of the custodian of the defendant's property who has been unwittingly involved by the defendant in his crime to exculpate himself promptly and voluntarily by disclosing the property and explaining his connection with it to government agents, must prevail over any claim of the defendant to have the privacy of his property maintain against a warrantless search. . . .

Id. (citing Gieffels v. State, 590 P.2d 55, 61 (Alaska 1979).

Third, with respect to the inevitable discovery doctrine, the trial court concluded that it applied to save the evidence, even if seizure of the briefcase had been unlawful. The doctrine applied, according to the trial court, because Deputy Wallen would have eventually obtained the

6

briefcase by search warrant, the application of which he would have supported with the statements of Ms. Quick and the victim. (Id. at 5-6.)

### E. Georgia Court of Appeals

In affirming this second decision of the trial court, the Georgia Court of Appeals did not discuss the merits of the trial court's first two holdings regarding Ms. Malin's authority to consent and her right to disassociate herself from the briefcase. Instead, the court held that the inevitable discovery doctrine saved the evidence even if one presumed only for the sake of argument that the trial court erred in deciding the complex issues of consent and disassociation. Wilder v. State, 740 S.E.2d 241, 243 (Ga. App. 2013), *cert. denied*, Wilder v. Georgia, 134 S. Ct. 642 (U.S. Nov. 18, 2013) (No. 13-6307).

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). If the burden of proof at trial rests with the movant, to prevail at summary judgment, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at summary judgment either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A defendant carries the initial burden of showing that the contested actions fall within his discretionary authority, then the burden shifts to the plaintiff to show (1) violation of a constitutional right; and (2) the right violated was clearly established at the time. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013) (citing Pearson, 555 U.S. at 232). Courts may assume for the sake of argument that a constitution violation occurred and grant summary judgment based on a finding that the right was not clearly established. Pearson, 555 U.S at 236.

Courts analyzing qualified immunity consider what an objectively reasonable official must have known factually and legally at the time of the decision, and they disregard later

8

discovery facts or changes in the law. Jackson v. Humphrey, -F.3d-, No. 14-10183, 2015 WL 151116, at *6, *8 (11th Cir. Jan. 13, 2015) (citing Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012)). "Indeed, if objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the officer deserves immunity from liability for civil damages." Id. at *7 (citations omitted).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (citations omitted). Moreover, qualified immunity applies regardless of whether the error made is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (citation omitted). When, at summary judgment, the facts assumed for purposes of applying qualified immunity "show mixed motives (lawful and unlawful motivations) and preexisting law does not dictate that the merits of the case must be decided in the plaintiff's favor, the defendant is entitled to immunity." Jackson, 2015 WL 151116 at *6 (citation omitted).

An officer is entitled to qualified immunity even if facts at summary judgment show that he "was, in reality, wrong about the facts" on which he acted. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). Rather, to defeat a summary judgment motion, a plaintiff must produce evidence that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." Id.; Hargis v. City of Orlando, 586 F. App'x 493, 494 n.1 (11th Cir. 2014) (same).

### C. Defendants Are Entitled to Qualified Immunity Because the Warrantless Seizure of Plaintiff's Briefcase Did Not Violate a Clearly Established Constitutional Right.

Neither side contests the indisputable fact that Defendants Wallen and Bentley were acting within the scope of their discretionary authority while investigating Plaintiff's criminal case and seizing Plaintiff's briefcase. Accordingly, the burden shifts to Plaintiff to show (1) violation of a constitutional right; and (2) that the right violated was clearly established at the time of the violation. Gilmore, 738 F.3d at 272. As explained below, even if one assumes for the sake of argument that the warrantless seizure of Plaintiff's briefcase violated the Fourth Amendment, it is beyond peradventure that the right was not clearly established at the time of the seizure. The Court thus grants summary judgment to Defendants on this basis alone, setting aside whether the warrantless seizure did, in fact, constitute a Fourth Amendment violation.

"A constitutional violation may be clearly established either by similar prior precedent, or in rare cases of 'obvious clarity.' With either method, the touchstone is whether the right would be apparent to a reasonable officer." Gilmore, 738 F.3d at 277. This is certainly not a case where the constitutional violation is obviously clear, as is evident from even a cursory review of the five judicial decisions spawned by Plaintiff's suppression motion. The Court thus turns to whether the alleged constitutional violation was clearly established by similar prior precedent.

In determining the prior precedent issue, a plaintiff carries the burden of pointing to pointing to a "materially similar case" issued prior to the events in question by the United States Supreme Court, the Eleventh Circuit, or the highest court in the state where the events occurred. Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012). To defeat Defendants' assertion of qualified immunity, Plaintiff must show their "supposedly wrongful act was already established

to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) (citation omitted). Plaintiff must show this by citing "controlling and materially similar case law that would establish" obtaining the briefcase after Ms. Malin agreed to release it was clearly unlawful. Id.

Plaintiff has not cited any materially similar case decided by the United States Supreme Court, the Eleventh Circuit, or the highest court of Georgia. In addition, the Court has diligently searched and not been able to find a case from these courts involving the warrantless seizure of luggage or a briefcase from a person entrusted by the defendant to keep it indefinitely, when the person so entrusted turns over the item to law enforcement because she is afraid and wants to disassociate herself from the unknown and potentially illegal contents.

One certainly cannot say that, at the time of the briefcase seizure, existing precedent had placed the constitutional question "beyond debate," as would be necessary to deny the protection of qualified immunity. Stanton, 134 S. Ct. at 7. On the contrary, Plaintiff's suppression motion sparked a great deal of debate between and among the Superior Court of Lincoln County, the Georgia Court of Appeals, and the Georgia Supreme Court. On two separate occasions, the trial court found that the warrantless seizure did not violate the Fourth Amendment because Ms. Malin voluntarily turned over the briefcase, and was entitled to do so, both as bailee and as a concerned citizen who had the right to disassociate herself from the briefcase and its unknown contents.

The Court of Appeals sidestepped the issue and focused instead on the independent source and inevitable discovery doctrines. The Georgia Supreme Court did address the Fourth Amendment issue, however, and left no question that the issue was complex, fact intensive, and

11

far from clearly decided by existing, binding precedent. In perhaps the most illuminating passage from that decision, the Georgia Supreme Court conceded that its decision to remand rather than take up the Fourth Amendment issue *sua sponte* was grounded in its professed "uncertainty over the applicability of the third party consent doctrine where, as here, there is evidence that the third party assumed the role of bailee with respect to property seized without a warrant." Wilder, 717 S.E.2d at 461. If the Georgia Supreme Court was uncertain of the issue in hindsight, despite its advantage of having a full transcript of the evidentiary hearing and decisions of the courts below, it is hardly fair to blame Defendants for not knowing the answer at the time Deputy Wallen seized the briefcase. Qualified immunity protects law enforcement officers in uncertain legal landscapes such as this.

**D. Plaintiff Has No Federal Claim Concerning Personal Property Allegedly Taken from the Seized Briefcase.**

As to Plaintiff's allegation in the Complaint that Defendants have not returned "personal and intimate" photos of his wife that were purportedly inside the briefcase, seizure and retention of property does not give rise to liability under § 1983 "if a meaningful postdeprivation remedy for the loss is available." Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984). Plaintiff may have a state law claim for conversion under O.C.G.A. § 51-10-1 that he never asserted in any court, including this one. Even if Plaintiff had asserted the claim in this Court, the Court would not exercise supplemental jurisdiction under 28 U.S.C. § 1367. See id. (holding that existence of Georgia state law claim for conversion of property precluded § 1983 due process claim against state officers for unlawfully seizing and retaining plaintiff's property); Morefield v. Smith, 404 F. App'x 443, 445 (11th Cir. 2010) (rejecting § 1983 due process claim against prison officials for seizure of plaintiff's property where plaintiff "had an adequate post-deprivation remedy under state law

12

because he could pursue a tort action for conversion of his personal property"); see also Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (noting that O.C.G.A. § 51-10-1 constitutes "an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law").

**IV.    CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the motion for summary judgment based on the application of qualified immunity. (Doc. no. 62.) The Court **DIRECTS** the Clerk to **ENTER** final judgment in favor of Defendants Jim Wallen and Edwin Bentley, **TERMINATE** all deadlines and motions, and **CLOSE** this civil action.[1]

SO ORDERED this 2nd day of March, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[1] The parties consented to exercise of jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, and the District Judge referred the case to this Court for all proceedings, including direction to enter a final judgment. (See doc. no. 32.)